UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------------

THE UNITED STATES OF AMERICA

vs.

CHRISTOPHER D. CASACCI,
d/b/a Exotic Cubs.com,

Defendant.

------------------------------------------------------------------------------------------

Docket No.: 20-CR-5-A

**<u>MEMORANDUM OF LAW IN SUPPORT OF
CHRISTOPHER D. CASACCI'S OMNIBUS PRETRIAL MOTIONS</u>**

James W. Grable, Jr., Esq.
Nicholas A. Romano, Esq.
**CONNORS LLP**
*Attorneys for Defendant*
  *CHRISTOPHER D. CASACCI*
1000 Liberty Building
Buffalo, New York  14202
(716) 852-5533
jwg@connorsllp.com
nar@connorsllp.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ......................................................................................................... 3

I. THIS COURT SHOULD DISMISS THE INDICTMENT AS
INSUFFICIENTLY PLED.................................................................................. 3

    A. THIS COURT SHOULD DISMISS ALL THIRTY-THREE COUNTS FOR FAILURE
        TO STATE AN OFFENSE AGAINST MR. CASACCI UNDER FEDERAL RULE
        OF CRIMINAL PROCEDURE 12(B)(3)(B)(V). ................................................. 4

        1. Counts 1 To 14 Fail To State A Crime Under The Lacey Act
            Because They Fail To State The "Essential Elements Of The
            Crime" And Fail To Allege Facts Sufficient To Assert A
            Violation Of The Lacey Act. ........................................................ 7

        2. Counts 15 To 18 Fail To State A Crime Under The Lacey Act
            Because They Fail To State The "Essential Elements Of The
            Crime." ....................................................................................... 9

        3. Counts 19 To 33 Fail To State A Crime Under The Animal
            Welfare Act Because They Fail To State The "Essential
            Elements Of The Crime." .......................................................... 10

    B. ALTERNATIVELY, THIS COURT SHOULD ORDER THE GOVERNMENT TO
        ELECT AMONG MULTIPLICITOUS COUNTS FOR PROSECUTION, AND
        DISMISS THE OTHERS UNDER FEDERAL RULE OF CRIMINAL
        PROCEDURE 12(B)(3)(B)(II). ..................................................................... 11

II. IN THE ALTERNATIVE TO DISMISSAL, THIS COURT SHOULD
STRIKE SURPLUSAGE FROM THE INDICTMENT. ................................... 13

III. IN THE ALTERNATIVE TO DISMISSAL, THIS COURT SHOULD
RECOMMEND SUPPRESSION OF ILLEGALLY OBTAINED
STATEMENTS AND SEIZED PROPERTY AND ORDER VARIOUS
FORMS OF DISCLOSURE AND PRESERVATION OF EVIDENCE. .......... 14

    A. DEMAND FOR A BILL OF PARTICULARS. ................................................. 14

    B. AN EVIDENTIARY HEARING AND SUPPRESSION OF STATEMENTS IN
        VIOLATION OF THE FIFTH AMENDMENT AND SEIZED ITEMS IN
        VIOLATION OF THE FOURTH AMENDMENT. .............................................. 17

        1. Statements. ................................................................................. 18

        2. Seized Items. .............................................................................. 20

            a. The search warrant application omitted material facts
              that would have vitiated any conclusion that there was
              probable cause. .................................................................... 21

b. Law enforcement exceeded the scope of the search warrant...................................................... 24

c. Law enforcement violated the search warrant and prejudiced Mr. Casacci by removing the African cats to Nevada and Arkansas.................................... 26

d. The "Good-Faith" exception does not apply............................. 27

e. "Evidence" seized by the government after the first illegal search and seizure must be suppressed as "fruit of the poisonous tree."..................................... 28

f. At a minimum, this Court must conduct an evidentiary hearing to address the issues related to suppression. ........... 29

C.   DISCOVERY UNDER RULES 12(B)(3)(E) AND 16 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE. .......................................... 30

D.   *BRADY* DOCTRINE MATERIALS.................................................... 34

E.   DISCLOSURE OF WITNESS STATEMENTS PURSUANT TO THE *JENCKS* ACT. ..................................................................... 42

F.   PRESERVATION OF ALL LAW ENFORCEMENT NOTES.............................. 43

G.   NOTICE OF EXPERT WITNESSES................................................. 44

H.   DISCLOSURE AND A HEARING PURSUANT TO FEDERAL RULES OF EVIDENCE 404(B), 608, AND 609............................................. 45

I.   DISCLOSURE PURSUANT TO FEDERAL RULE OF EVIDENCE 807. ............. 45

J.   DISCLOSURE PURSUANT TO FEDERAL RULE OF EVIDENCE 806. ............. 46

K.   LEAVE TO MAKE FURTHER MOTIONS AND TO SUPPLEMENT THESE MOTIONS.......................................................................... 46

CONCLUSION................................................................................... 47

# TABLE OF AUTHORITIES

## Cases

*Ball v. United States*, 470 U.S. 856 (1985) ................................................................ 11

*Blockburger v. United States*, 284 U.S. 299 (1932) ............................................. 11, 12

*Brady v. Maryland*, 373 U.S. 83 (1963) ........................................................... passim

*Brinegar v. United States*, 338 U.S. 160 (1949) ...................................................... 21

*Brown v. Ohio*, 432 U.S. 161 (1977) ...................................................................... 11

*Carroll v. United States*, 267 U.S. 132 (1925) ....................................................... 21

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) .......................................... 44

*Franks v. Delaware*, 438 U.S. 154 (1978) ...................................................... 23, 29

*Giglio v. United States*, 405 U.S. 150 (1972) .................................... 33, 38, 43, 46

*Giles v. Maryland*, 386 U.S. 66 (1967) ................................................................... 37

*Goldberg v. United States*, 425 U.S. 94 (1976) ...................................................... 43

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ............................................. 44

*Kyles v. Whitley*, 514 U.S. 419 (1995) ................................................................... 34

*Lego v. Twomey*, 404 U.S. 477 (1972) .................................................................... 20

*Maryland v. Garrison*, 480 U.S. 79 (1987) ............................................................. 24

*Miranda v. Arizona*, 384 U.S. 436 (1966) ........................................... 18, 19, 20, 32

*Murray v. United States*, 487 U.S. 533 (1988) ....................................................... 29

*New York v. Harris*, 495 U.S. 14 (1990) ................................................................ 28

*Olden v. Kentucky*, 488 U.S. 227 (1988) ................................................................ 39

*Preston v. United States*, 376 U.S. 364 (1964) ...................................................... 20

*Russell v. United States*, 369 U.S. 749 (1962) ........................................................ 4

*Tague v. Louisiana*, 444 U.S. 469 (1980) ............................................................... 20

*Texas v. Brown*, 460 U.S. 730 (1983) .................................................................... 21

*Thomas v. United States*, 343 F.2d 49 (9th Cir. 1965) ............................................ 37

*United States v. Agurs*, 427 U.S. 97 (1976) ........................................................... 34

*United States v. Armocida*, 515 F.2d 49 (3d Cir. 1976) .......................................... 15

*United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998) .......................................... 35

*United States v. Bagley*, 473 U.S. 667 (1985) .................................................. 34, 38

*United States v. Bailleaux*, 685 F.2d 1105 (9th Cir. 1982) ..................................... 35

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) ........................................ 15

*United States v. Canfield*, 212 F.3d 713 (2d Cir. 2000) ....................................... 23, 24

*United States v. Chacko*, 169 F.3d 140 (2d Cir. 1999) ................................................. 11

*United States v. Cherna*, 184 F.3d 403 (5th Cir. 1999).............................................. 28

*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001)................................................. 35

*United States v. Cordero*, 1998 WL 160819 (N.D.N.Y. Mar. 31, 1998) .................... 43

*United States v. Edwardo-Franco*, 885 F.2d 1002 (2d Cir. 1989)............................. 35

*United States v. Fejes*, 232 F.3d 696 (9th Cir. 2000) .................................................... 6

*United States v. Galpin*, 720 F.3d 436  (2d Cir. 2013) ............................................... 25

*United States v. Ganias*, 824 F.3d 199 (2d Cir. 2016)............................................... 25

*United States v. Gladstone*, 2000 WL 1752918 (S.D.N.Y. Nov. 29, 2000)................ 44

*United States v. Glaze*, 313 F.2d 757 (2d Cir. 1963) ........................................... 15, 17

*United States v. Gleason*, 265 F.Supp. 880 (S.D.N.Y. 1967) ..................................... 37

*United States v. Graziano*, 558 F.Supp.2d 304 (E.D.N.Y. 2008); ............................. 25

*United States v. Griswold*, 2011 WL 7473466 (W.D.N.Y. June 2, 2011)................... 25

*United States v. Gullo*, 672 F.Supp. 99 (W.D.N.Y. 1987)........................................... 43

*United States v. Inryco Inc.*, 642 F.2d 290 (9th Cir. 1981) ........................................ 15

*United States v. Iverson*, 648 F.2d 737 (D.C. Cir. 1981)............................................ 37

*United States v. Kendall*, 766 F.2d 1426 (10th Cir. 1985)......................................... 35

*United States v. Kiszewski*, 877 F.2d 210 (2d Cir. 1989)........................................... 35

*United States v. Lee*, 862 F.Supp. 1129 (S.D.N.Y. 1994) .......................................... 44

*United States v. Leja*, 568 F.2d 493 (6th Cir. 1977).................................................. 35

*United States v. Leon*, 468 U.S. 897 (1984)................................................... 23, 27, 28

*United States v. Leung*, 40 F.3d 577 (2d Cir. 1994)................................................... 35

*United States v. Liu*, 239 F.3d 138 (2d Cir. 2000)..................................................... 26

*United States v. McDougall*, 25 F.Supp.2d 85 (N.D.N.Y. 1998) ................................. 5

*United States v. Napolitano*, 552 F.Supp. 465 (S.D.N.Y. 1982) ............................... 13

*United States v. Panza*, 750 F.2d 1141 (2d Cir. 1984) .............................................. 15

*United States v. Payton*, 573 F.3d 859 (9th Cir. 2009) ............................................. 25

*United States v. Petito*, 671 F.2d 68 (2d Cir. 1982).................................................. 43

*United States v. Phillips*, 88 F.3d 582 (8th Cir. 1996) .............................................. 28

iv

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000) ............................................... 4, 7, 10

*United States v. Reyes*, 18 F.3d 65 (2d Cir. 1994) .......................................................... 33

*United States v. Rivas*, 157 F.3d 364 (5th Cir. 1998) ................................................... 29

*United States v. Romano*, 137 F.3d 677 (1st Cir. 1998) ....................................... 5, 6, 9

*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998) ................................................ 23

*United States v. Scarpa*, 913 F.2d 993 (2d Cir. 1990) .......................................... 13, 14

*United States v. Smith*, 9 F.3d 1007 (2d Cir. 1993) ..................................................... 20

*United States v. Solovey*, 2005 WL 1279228 (W.D.N.Y. May 31, 2005) ...................... 4

*United States v. Tellez*, 217 F.3d 547 (8th Cir. 2000) ................................................. 28

*United States v. Tinsdale*, 195 F.3d 70 (2d Cir. 1999) ............................................... 28

*United States v. Trzaska*, 111 F.3d 1019 (2d Cir. 1997) ...................................... 24, 29

*United States v. Van Shutters*, 163 F.3d 331 (6th Cir. 1998) .................................... 28

*United States v. Vendetti*, 2013 WL 5522860 (W.D.N.Y. Jan. 22, 2013) .................... 3

*United States v. Walker*, 922 F.Supp. 732 (N.D.N.Y. 1996) ...................................... 15

*United States v. Weingarten*, 713 F.3d 704 (2d Cir. 2013) .................................. 11, 12

*United States v. Williams*, 181 F.Supp.2d 267 (S.D.N.Y. 2001) ............................... 42

*United States v. Zemlyansky*, 945 F.Supp.2d 438 (S.D.N.Y. 2013) .......................... 25

*Wong Sun v. United States*, 371 U.S. 471 (1963) ................................................ 28, 29

*Yeargain v. United States*, 314 F.2d 881 (9th Cir. 1963) ........................................... 15

## Statutes

16 U.S.C. § 3372 ............................................................................................................. 5

16 U.S.C. § 3372(a) ...................................................................................................... 4, 5

16 U.S.C. § 3372(d)(2) .................................................................................................. 10

16 U.S.C. § 3373(d) ..................................................................................................... 5, 8

16 U.S.C. § 3373(d)(1) .................................................................................................... 5

16 U.S.C. § 3373(d)(1)(B) ............................................................................... 6, 8, 12, 16

18 U.S.C. § 3500 ...................................................................................................... 42, 44

7 U.S.C. § 2134 .......................................................................................... 10, 12, 13, 14

7 U.S.C. § 2132 ............................................................................................................. 13

New York State Environmental Conservation Law § 11-0512(1)(a) ...................... 9, 16

New York State Environmental Conservation Law § 11-0512(2)(d) .................. 22, 23

New York State Environmental Conservation Law § 11-5012 ........................... 25, 27

## **Other Authorities**

Federal Rule of Criminal Procedure 7(c)(1) ............................................................. 3, 13

Federal Rule of Criminal Procedure 7(d) ................................................................. 14

Federal Rule of Criminal Procedure 7(f) ................................................................. 15

Federal Rule of Criminal Procedure 12 ............................................................ 30, 34

Federal Rule of Criminal Procedure 12(b)(3)(B)(ii) ............................................. 4, 11

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) .................................................. 3, 4

Federal Rule of Criminal Procedure 16 ...................................................... 30, 34, 44

Federal Rule of Criminal Procedure 16(a)1(E) ...................................................... 27

Federal Rule of Evidence 404 ..................................................................................... 45

Federal Rule of Evidence 608 ..................................................................................... 45

Federal Rule of Evidence 609 ..................................................................................... 45

Federal Rule of Evidence 702 ..................................................................................... 44

Federal Rule of Evidence 703 ..................................................................................... 44

Federal Rule of Evidence 801 ..................................................................................... 46

Federal Rule of Evidence 806 ..................................................................................... 46

Federal Rule of Evidence 807 ..................................................................................... 45

<u>**PRELIMINARY STATEMENT**</u>

Christopher D. Casacci is a successful 37-year-old entrepreneur and small business owner.  A Western New York native, Chris is a doting father to his two daughters and a lifelong animal lover.  In late 2017, Chris followed his passion for animals and started an African cat project (ExoticCubs.com), and Exotic Cat Humane Society, LLC, in part to rescue African cats and place them in healthy, safe sanctuaries and other environments.  Chris limited his project to small serval and caracal kittens, which were no larger than 3 to 12 lbs., or the size of a domestic cat.

Over the next several months, Mr. Casacci worked with and inquired of various federal and New York State authorities, including the New York State Department of Environmental Conservation, United States Department of Agriculture, United States Fish and Wildlife Service, Center for Disease Control and Prevention, and United States Customs and Border Protection, in an effort to navigate and comply with the tangled web of overlapping federal and New York State statutes, regulations, and rules to attempt to ensure he obtained the proper licensing and authorization needed for his new project.  Mr. Casacci quickly learned that this was a complicated process, and that both the federal and state governments regulate this space.  Ultimately, based upon the advice he received from various government officials, Mr. Casacci obtained his Import/Export License from United States Fish and Wildlife Service on December 20, 2017, and incorporated his exotic cat humane society with the New York State Department of State on January 17, 2018.  He thought he was "good to go."

In early June 2018, Mr. Casacci learned that the information he had received regarding licensing was inaccurate and that he needed to obtain a USDA Class B Dealer License to continue his business. With this new information, Mr. Casacci immediately applied for the license, emailed potential buyers, and announced on his company's website that "[s]ales halted while we await finalizing of USDA license." Mr. Casacci was out in the open with federal and New York State regulators and the public as he continued his efforts to comply with a complicated patchwork of rules that were confusing even to the government employees who were sometimes giving him conflicting information.

The government learned about Mr. Casacci's project after his license application in June 2018. Despite Mr. Casacci's efforts to lawfully operate his company, the government claims Mr. Casacci violated the Lacey Act by illegally possessing and trafficking African cats and by falsely labeling them in interstate commerce. The government also claims Mr. Casacci violated the Animal Welfare Act with his new project and trafficking African cats without a license. But the government is mistaken because Mr. Casacci never acted with the requisite *mens rea* necessary for him to have violated these statutes. Mr. Casacci was not the mastermind of an underground exotic animal trade. He is not a poacher, trafficker, or abuser of animals. To the contrary – he is just an animal lover trying to start a new project and rescue African cats.

The Indictment against Mr. Casacci should be dismissed because it is defective for failing to state an offense and for charging the same offense in more than one count.

In the alternative, if this Court concludes that any count of the Indictment should survive this motion despite its defects, this Court should order the government to furnish a bill of particulars providing Mr. Casacci with sufficient notice of the specific allegations against him. In addition, this Court should order an evidentiary hearing and, ultimately, suppress statements illegally taken from Mr. Casacci, suppress items illegally seized from his home, and suppress any fruits of these illegal acts. Finally, this Court should strike surplusage language from the Indictment and direct the government to disclose and preserve various categories of evidence essential to Mr. Casacci's defense, together with all additional further relief this Court deems appropriate.

## ARGUMENT

## I. THIS COURT SHOULD DISMISS THE INDICTMENT AS INSUFFICIENTLY PLED.

A defendant may move to dismiss on the grounds that there is a defect in the indictment for failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment must provide a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). To this end, it must "contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet." *United States v. Vendetti*, 2013 WL 5522860, at *2 (W.D.N.Y. Jan. 22, 2013) (quoting

*Russell v. United States*, 369 U.S. 749, 763 (1962) (internal alterations omitted));
*see also United States v. Solovey*, 2005 WL 1279228, at *3-*4 (W.D.N.Y. May 31,
2005) (recommending dismissal of an indictment that failed to contain an essential
factual assertion).

When "one element of the offense is implicit in the statute, rather than
explicit, and the indictment tracks the language of the statute and fails to allege the
implicit element explicitly, the indictment fails to allege an offense." *See United
States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000) (internal citations and quotation
marks omitted). Rather, "the indictment must state some fact specific enough to
describe a particular criminal act, rather than a type of crime." *Id.* at 93.

The Indictment in this case alleges thirty-three counts. The Lacey Act
(Counts 1 to 18) and Animal Welfare Act (Counts 19 to 33) counts fail to state an
offense under Federal Rule of Criminal Procedure 12(b)(3)(B)(v)." Additionally, in
the alternative, many of the counts are multiplicitous and therefore should be
dismissed under Federal Rule of Criminal Procedure 12(b)(3)(B)(ii).

> A. THIS COURT SHOULD DISMISS ALL THIRTY-THREE COUNTS FOR
> FAILURE TO STATE AN OFFENSE AGAINST MR. CASACCI UNDER
> FEDERAL RULE OF CRIMINAL PROCEDURE 12(B)(3)(B)(V).

The Lacey Act, 16 U.S.C. § 3372(a), makes it unlawful "to import, export,
transport, sell, receive, acquire, or purchase any fish or wildlife or plant taken,
possessed, transported or sold in violation of any" state, federal or foreign law, or, as
relevant here, New York State law. This provision is the general prohibitory

provision of the Lacey Act, establishing the universe of conduct which may give rise to civil or criminal liability under the Act.

The Lacey Act is designed to close United States markets to trade in illegally possessed or captured wildlife. Thus, for example, if a tiger is captured in India, in violation of Indian law, it would violate the Lacey Act to import the tiger into the United States. Or, if an elk is killed in Washington without a hunting license, in violation of Washington state law, it would violate the Lacey Act to sell that animal. The Lacey Act thereby prohibits commerce in wildlife taken in violation of state, tribal, or foreign law. *United States v. McDougall*, 25 F.Supp.2d 85, 89 (N.D.N.Y. 1998).

The elements of a criminal violation of the Lacey Act are defined in § 3373(d). That section attaches criminal penalties to a subset of the conduct made "unlawful" under § 3372. *See United States v. Romano*, 137 F.3d 677, 679, 681 (1st Cir. 1998). Thus, whether the Indictment states a criminal violation of the Lacey Act must be measured against the requirement of § 3373(d), not the broader proscriptions of § 3372(a) which describes civil violations of the Lacey Act.

16 U.S.C. § 3373(d)(1) defines a felony violation of the Lacey Act, in pertinent part, as follows:

> Any person who . . . violates any provision of this chapter . . . by knowingly engaging in conduct that involves the sale or purchase of, the offer of sale or purchase of, or the intent to sell or purchase fish or wildlife or plants with a market value in excess of $350, knowing that the fish or wildlife or plants were taken, possessed, transported, or sold in violation of, or in a manner unlawful under, any underlying law, treaty or regulation, shall be fined not more than $20,000 or imprisoned for not more than five years, or both.

16 U.S.C. § 3373(d)(1)(B).

Thus, the statute itself requires that, to establish a felony violation of the Lacey Act, the government must establish several essential elements. First, an animal must be "taken, possessed, transported, or sold" illegally. *See id.* Second, the defendant must have "knowingly engag[ed] in conduct that involves the sale or purchase" of the animal. *See id.* Third, the defendant must have known the wildlife was taken, possessed, transported, or sold in violation of law, treaty, or regulation. *See id.* In other words, a defendant must have done more than possess, transport, or sell a protected animal. He must also have known that the animal was "taken, possessed, transported, or sold" unlawfully. *See* 16 U.S.C. § 3373(d)(1)(B). The statute requires specific intent, and punishes only those who knew that the animal was taken, transported, or sold in violation of the law. Put another way, if a defendant is mistaken about what the law requires and subjectively believes an animal is being transported or sold in compliance with the law, he is not guilty. *See id.*; *see also Romano*, 137 F.3d at 681; *United States v. Fejes*, 232 F.3d 696, 700 (9th Cir. 2000) (defendant must know that wildlife were taken illegally before he sells it).

1. **Counts 1 To 14 Fail To State A Crime Under The Lacey Act Because They Fail To State The "Essential Elements Of The Crime" And Fail To Allege Facts Sufficient To Assert A Violation Of The Lacey Act.**

Counts 1 to 14 of the Indictment merely sets forth a list of dates, species, and purchasers and merely recites federal and New York State law without any particulars or factual assertions about Mr. Casacci's conduct, knowledge, or intent. *See* Docket No. 1 (Indictment) at pgs. 3-4 ¶¶ 1-2. These counts and the recitations therein do not state a criminal violation of the Lacey Act. Indeed, the Indictment lacks any specific averments of *mens rea* or *actus reus* in support of the counts. *See id.* The Second Circuit requires that an indictment must do more than simply "track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Pirro*, 212 F.3d at 92

> [W]here the definition of an offense, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offen[s]e in the same generic terms as in the definition; but it must state the species,-- it must descend to particulars. Undoubtedly, the language of the statute may be used in the general description of an offense, but it *must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense*, coming under the general description, with which he is charged.

*Pirro*, 212 F.3d at 93 (internal citations and quotation marks omitted) (emphasis added). Furthermore, the Second Circuit requires that a defendant "is entitled to an indictment that states the essential elements of the charge against him." *Id.* at 91.

In addition to lacking the "essential elements of the crime," Counts 1 to 14 of this Indictment also fail to allege any facts whatsoever in support of the conclusory introductory assertion that Mr. Casacci knew the animals were possessed and transported in violation of the laws and regulations of New York State or any other law or regulation. Although the Indictment sets forth this conclusory assertion without any facts in an introductory paragraph that precedes Counts 1 through 14, *see* Docket No. 1 at pg. 3 ¶ 2, each of Counts 1 through 14 contain no factual assertions about this essential element of the offense. The omission is significant and telling; Mr. Casacci did his best to comply with federal and New York State law at all times and never acted with intent to violate federal or state laws, regulations, or rules. It is not surprising, therefore, that the Indictment would not allege that which cannot be shown.

In addition, Counts 1 through 14 fail to allege or assert anything whatsoever about the initial illegal conduct before the alleged illegal selling of the African cats necessary to satisfy § 3373(d)(1)(B). It is not enough that Mr. Casacci allegedly sold the African cats. Rather, in keeping with the intent of the Lacey Act to prevent commerce in illegal animals, a criminal violation of § 3373(d) requires a separate act – an initial illegal taking, possession, transportation, or sale of an animal followed by commerce. That is not alleged here in any of these counts.

Indeed, to state a crime under 16 U.S.C. § 3373(d), the indictment must allege that at the time of any conduct "that involves the intent to sell" African cats, the African cats had already been taken possessed, transported, or sold in violation

8

of law. *See Romano*, 137 F.3d at 681 ("Congress' use of the word 'were' [in the Lacey Act] implies that at the time of the purchase, the underlying taking, possession, or act of transport . . . must have already occurred"). The Indictment makes no such allegation. The assertion in the introductory paragraph that precedes Counts 1 to 14, which asserts in conclusory introductory language that Mr. Casacci sold the African cats "knowing such wildlife was possessed and transported in violation of the laws and regulations of New York State, especially New York Environmental Conservation Law Section 11-0512(1)(a)," s*ee* Docket No. 1 at pg. 3 ¶ 2, is insufficient. The indictment must also sufficiently allege prior illegal taking, possession, transportation, or sale in these fourteen counts, *see generally id.*, and as a result these counts fail to state an offense.

Accordingly, because Counts 1 to 14 fail to allege the "essential elements of the crime" and fail to allege any factual assertions or alleged conduct stating how Mr. Casacci illegally possessed, transferred, or sold the African cats; or that when he did so, Mr. Casacci acted with sufficient specific intent to violate the law, a regulation, or a rule, Counts 1 to 14 should be dismissed.

2. **Counts 15 To 18 Fail To State A Crime Under The Lacey Act Because They Fail To State The "Essential Elements Of The Crime."**

In addition, it is a separate felony under the Lacey Act to knowingly engage in conduct involving the sale of, offer of sale of, and intent to sell wildlife with a market value greater than $350, by knowingly making and submitting, and causing to be made and submitted a false record, account, label for and false identification of

wildlife, which wildlife were and were intended to be transported in interstate commerce. 16 U.S.C. § 3372(d)(2).

Similar to Counts 1 to 14, Counts 15 to 18 of the Indictment are a simple chart of dates and "Description of Falsification" with a verbatim recitation of the law. *See* Docket No. 1 at pgs. 4-5 ¶¶ 1-2. These counts are devoid of the "essential elements of the charge[s]." *Pirro*, 212 F.3d at 91-92 (internal citations omitted). Accordingly, because Counts 15 to 18 fail to allege the "essential elements of the crime" they should be dismissed.

### 3. Counts 19 To 33 Fail To State A Crime Under The Animal Welfare Act Because They Fail To State The "Essential Elements Of The Crime."

Under the Animal Welfare Act, it is a misdemeanor to knowingly, while acting as a "dealer," sell, transport, and offer to sell and transport, in interstate commerce for use as a pet any warm-blooded animal without having obtained a license. *See* 7 U.S.C. § 2134.

Just as with defective Counts 1 to 18, Counts 19 through 33 of the Indictment are another chart that simply lists dates, species, and "Purchaser," with an introductory paragraph that precedes these counts that recites the statute in conclusory fashion without any facts about any count. *See* Docket No. 1 at pgs. 5-6 ¶¶ 1-2. These counts, like Counts 1 through 18, are devoid of the "essential elements of the charge[s]." *Pirro*, 212 F.3d at 91-92 (internal citations omitted). Accordingly, because Counts 19 to 33 fail to allege the "essential elements of the crime" they too should be dismissed.

**B.**     ALTERNATIVELY, THIS COURT SHOULD ORDER THE GOVERNMENT TO ELECT AMONG MULTIPLICITOUS COUNTS FOR PROSECUTION, AND DISMISS THE OTHERS UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 12(B)(3)(B)(II).

A multiplicitous indictment creates an exaggerated impression of criminal activity by charging "a single offense as an offense multiple times, in separate counts, when, in law and in fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999). This artificial multiplication of charges violates the Double Jeopardy Clause of the Fifth Amendment, which assur[es] that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977).

Courts use the test formulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine whether charges under two criminal statutes state one offense or two, and whether Congress intended to permit multiple convictions under two separate statutes for the same conduct. *See, e.g., Ball v. United States*, 470 U.S. 856, 861 (1985). That test determines "whether each offense contains an element not contained in the other, and provides that, if not, they are the same offen[s]e and double jeopardy bars additional punishment. *United States v. Weingarten*, 713 F.3d 704, 708 (2d Cir. 2013) (internal quotations omitted).

Here, Counts 1 through 14 of the Indictment charging violations of the Lacey Act mirror Counts 19 through 33 charging violations of the Animal Welfare Act. They involve the identical alleged conduct, on the same alleged sates with the same alleged animals. Counts 19 to 33 are essentially lesser included offenses of Counts

11

1 to 14.  In other words, Mr. Casacci could not have committed the felony offense of the Lacey Act charged in Counts 1 to 14 without also committing the misdemeanor offense of the Animal Welfare Act in Counts 19 to 33.  Because Counts 19 to 33 do not require proof of any fact not required to be proven for Counts 1 to 14, for purposes of double jeopardy and multiplicity analysis they are the same offense. *See Weingarten*, 713 F.3d 708.

The elements of a felony violation of the Lacey Act are that the defendant: (1) knowingly; (2) engaging in conduct that involved the sale or offer or intent to sell; (3) fish or wildlife; (4) with a market value in excess of $350; (5) knowing that the fish or wildlife were taken in an unlawful manner.  *See* 16 U.S.C. § 3373(d)(1)(B).  The Animal Welfare Act punishes those who:  (1) sell or offer to sell or transport as a pet; (2) any animal; (3) "unless and until such dealer . . . shall have obtained" the necessary license to do so.  *See* 7 U.S.C. § 2134.

Although the Lacey Act contains elements not necessary for the Animal Welfare Act, the opposite is not true.  There are no elements of the Animal Welfare Act that are not also elements of the Lacey Act.  A defendant cannot commit the felony without simultaneously having committed the misdemeanor.  Consequently, for purposes of double jeopardy, Counts 1 to 14 and Counts 19 to 33 charge the same offense. *See Blockburger*, 284 U.S. at 304 (1932).  Therefore, this Court should order the government to elect between Counts 1 to 14 or Counts 19 to 33 for prosecution, and this Court should dismiss the others.

## II. IN THE ALTERNATIVE TO DISMISSAL, THIS COURT SHOULD STRIKE SURPLUSAGE FROM THE INDICTMENT.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that the indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." The Animal Welfare Act counts in this Indictment contain language that is "immaterial and irrelevant," argumentative, and unfairly prejudicial. *See United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990); *United States v. Napolitano*, 552 F.Supp. 465, 480 (S.D.N.Y. 1982). These counts should be dismissed for the reasons set forth *supra*, but in the event this Court allows any of these counts to proceed, the surplusage in these counts should be stricken pursuant to Rule 7(d).

Paragraph 5 of the Introductory Allegations to the Indictment, reads:

> 5.    The Animal Welfare Act, 7 U.S.C. § 2134, prohibited anyone acting as a "dealer" or "exhibitor," as those terms are defined under 7 U.S.C. §§ 2132, *et seq.*, and the Act's implementing regulations, from selling or transporting, or offering to sell or transport, any animals, *unless and until that person has demonstrated compliance with minimum standards for the humane treatment of animals* and has a [sic] received a license from the United States Department of Agriculture (USDA)."

*See* Docket No. 1 at pg. 2 ¶ 5 (emphasis added). Similarly, paragraph 2 for Counts 19 to 33 reads:

> 2.    On or about the dates listed below, in the Western District of New York, and elsewhere, the defendant, CHRISTOPHER D. CASACCI, did knowingly, and while acting as a "dealer" under the Animal Welfare Act, sell, transport, and offer to sell and transport, in interstate commerce for use as pets, the animals set forth below, *without demonstrating compliance with minimum standards for the humane treatment of animals* and obtaining the requisite license from the United State Department of Agriculture.

*See id.* at pgs. 5-6 at ¶ 2 (emphasis added). The italicized language in these paragraphs is not an element of the offense. *See* 7 U.S.C. § 2134. In fact, this language appears no where in the statute. *See id.* It is included to unfairly and prejudicially insinuate to the jury falsely that Mr. Casacci treats animals inhumanely. The Court will likely read the Indictment to the jury at the outset of the trial, causing unfair and irreparable prejudice to Mr. Casacci before the jury even hears proof. With the reading of this prejudicial surplusage, the Court would be falsely implying to the jury that Mr. Casacci housed the African cats in poor conditions and that he abused or neglected them. This is not true, it is not part of the statute or charged conduct, it is irrelevant to the government's charges, and it is inflammatory and unfairly prejudicial. As such it is surplusage and should be stricken form the Indictment. *See* Fed. R. Crim. P. 7(d); *Scarpa*, 913 F.2d at 1013.

## III. IN THE ALTERNATIVE TO DISMISSAL, THIS COURT SHOULD RECOMMEND SUPPRESSION OF ILLEGALLY OBTAINED STATEMENTS AND SEIZED PROPERTY AND ORDER VARIOUS FORMS OF DISCLOSURE AND PRESERVATION OF EVIDENCE.

### A. DEMAND FOR A BILL OF PARTICULARS.

The Indictment lacks sufficient specificity of the conduct in which Mr. Casacci supposedly engaged. The indefiniteness and vagueness of the government's theory of culpability prevent an intelligent, tailored response and defense to the allegations. As such, this Court should direct the government to provide a bill of particulars to sufficiently apprise Mr. Casacci of the allegations against him.

Rule 7(f) provides that a "court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). This Court should use its discretion to grant Mr. Casacci's request for a bill of particulars. *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (*citing United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984)). Guidance to assist court with the exercise of that discretion is found in the Advisory Committee Notes of the 1966 Amendment to Rule 7(f), which explained that the rule was amended to "encourage a more liberal attitude by the courts towards bills of particulars."

A bill of particulars serves three necessary functions: (1) to prepare a defense, (2) to prevent surprise at trial, and (3) to limit the government's proof. *See United States v. Glaze*, 313 F.2d 757, 759 (2d Cir. 1963). The particulars sought here are factual information that is not included in the Indictment to allow Mr. Casacci to prepare a defense. *See United States v. Walker*, 922 F. Supp. 732, 738-39 (N.D.N.Y. 1996). This request does not seek "wholesale discovery of the government's evidence," *United States v. Armocida*, 515 F.2d 49, 54 (3d Cir. 1975), it seeks sufficient information to permit Mr. Casacci "to prepare an intelligent defense." *See Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963); *United States v. Inryco Inc.*, 642 F.2d 290, 295 (9th Cir. 1981).

More specifically, the following particulars are essential to Mr. Casacci's preparation of his defense:

1. With respect to **Counts 1 to 14**:

    a. State how Mr. Casacci initially "t[oo]k[], possessed, transported, or sold" the African cats in violation of New York Environmental Conservation Law § 11-0512(1)(a);

    b. State the specific market value of each animal[1] involved in the alleged conduct;

    c. Disclose the pedigree information for each animal involved in the alleged conduct; and

    d. Specify the location of each purchaser and alleged transaction.

2. With respect to **Counts 15-18**:

    a. State the specific market value of each animal involved in the alleged conduct;

    b. Disclose the pedigree information for each animal involved in the alleged conduct;

    c. Specify the location of each purchaser and alleged transaction;

    d. Identify the carrier for each count that transported the animal in "interstate commerce";

    e. Identify all documents and provide copies of those allegedly fraudulent invoices, declarations, or similar alleged documents; and

    f. Identify all documents, invoices, declarations, or similar alleged documents upon which each count rests.

---

[1] Market value in excess of $350 per animal is required under the statute. *See* 16 U.S.C. § 3373(d)(1)(B).

3. With respect to **Counts 19-33**:

    a. State the specific market value of each animal involved in the alleged conduct;

    b. Disclose the pedigree information for each animal involved in the alleged conduct; and

    c. Specify the location of each purchaser and alleged transaction.

Production of these particulars is not onerous or burdensome, nor does it require the government to disclose its evidence in support of the allegations. Instead, they require the government to tell Mr. Casacci what he is alleged to have done that is charged as being criminal. In other words, they give him fair notice of the charges against him so that he may defend himself.

As such, this short list of particulars is essential to Mr. Casacci's defense. Without these particulars, he will be denied an opportunity to prepare a defense, to avoid multiple prosecutions for the same offenses, and to avoid unfair surprise at trial. *See Glaze*, 313 F.2d at 759.

**B.**      **AN EVIDENTIARY HEARING AND SUPPRESSION OF STATEMENTS IN VIOLATION OF THE FIFTH AMENDMENT AND SEIZED ITEMS IN VIOLATION OF THE FOURTH AMENDMENT.**

The government obtained statements from Mr. Casacci that it took from him after he invoked his right to counsel and his right to remain silent, but before he was afforded access to his counsel. *See* Romano Decl.[2] at ¶¶ 15-17. These

---

[2] References to "*Romano Decl.*" are to the accompanying Declaration of Nicholas A. Romano, Esq., in Support of Omnibus Pretrial Motions, executed on May 8, 2020.

statements were obtained from him in violation of the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966). Consequently, they should be suppressed.

In addition, the government conducted a search of Mr. Casacci's residence and copied his computer. *See id.* at ¶ 19; Casacci Decl.[3] at ¶ 6. Mr. Casacci has standing to challenge these searches and seizures, and they were conducted in violation of the Fourth Amendment. As such, the illegally seized evidence and any evidence derived from or connected to the illegally seized evidence must be suppressed.

### 1. Statements.

Investigators from the New York State Department of Environmental Conservation and United States Fish and Wildlife Service interviewed Mr. Casacci at his home during the execution of the search warrant on July 5, 2018. *See* Romano Decl. at ¶¶ 15-17 & *Exhibits D* (NYSDEC Investigation Report & Mr. Casacci's Statements) & *E* (Audio Recording of Mr. Casacci's Statements & Transcript).[4] [5]

The Fifth Amendment requires that no person be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda*, the Supreme Court described how custodial interrogation causes "inherently compelling pressures which work to undermine the individual's will to resist and to compel him

---

[3] References to "*Casacci Decl.*" are to the accompanying Declaration of Christopher D. Casacci, executed on May 8, 2020.

[4] References to "*Exhibits*" are to the exhibits appended to the Romano Decl.

[5] Because this is a NYSDEC Report of Investigation that contains confidential information, the publicly-filed version of this exhibit is redacted. This Court and the government, however, have been provided with unredacted copies.

to speak where he would not otherwise do so freely." 384 U.S. at 467. Consequently, the prosecution may not use statements elicited through custodial interrogation unless the use of specific procedural safeguards guarantee that the person has been informed of his Fifth Amendment privileges and freely waived them. *See id.* at 444-45. This is typically accomplished through the use of *Miranda* warnings that advise the person of his various rights. *See id.*

Here, law enforcement told Mr. Casacci he was not permitted to leave his home during the search warrant execution, and he was not given *Miranda* warnings before they conducted a custodial interrogation of him. *See* Romano Decl. at ¶ 16. What is more, as this Court can hear from the audio of the interrogation, Mr. Casacci explained to law enforcement, "I would like a lawyer due to the nature of where I think this is going. I am not going to answer anything related to that. I know you guys are doing your job; it is just the nature of where it's looking. I don't feel comfortable answering any questions as it pertains to this." *See* Romano Decl. at ¶ 16 & *Exhibit E* (Transcript & Audio Recording of Statement) at pg. 2. Despite Mr. Casacci's invocation of his right to counsel and right to remain silent, law enforcement nevertheless elicited statements from Mr. Casacci. *See* Romano Decl. at ¶ 16 & *Exhibit D* (Portion of NYSDEC Investigation Report & Statement) at pg. 4. They claim that Mr. Casacci made a separate statement "while standing outside of the residence." *See* Romano Decl. at ¶ 16 & *Exhibit D* at pgs. 2-3. But, similar to the audio recording described above, Mr. Casacci also invoked his right to counsel and right to remain silent outside during that separate custodial interrogation.

As this Court knows, the government bears the burden of establishing a knowing, voluntary, and intelligent waiver of *Miranda* rights and the voluntariness of statements. *See Tague v. Louisiana*, 444 U.S. 469, 470-71 (1980); *Lego v. Twomey*, 404 U.S. 477, 489 (1972); *Miranda*, 384 U.S. at 475 (noting the government's "heavy burden" to show that suspect in custody was informed of rights and voluntarily waived them). Here, the government cannot meet its burden.

At a minimum, this Court should order an evidentiary hearing to resolve any factual disputes related to the statements attributed to Mr. Casacci, and to determine the appropriate suppression remedy applicable to the violation of Mr. Casacci's Fifth Amendment rights.

### 2. Seized Items.

In addition to the statements illegally obtained from Mr. Casacci, the government conducted searches and seizures in violation of his Fourth Amendment rights. These searches and seizures also necessitate suppression.

Review of the validity of the search warrant in question, though issued by a New York State town justice and executed primarily by state law enforcement agents, must be done solely in the context of the Fourth Amendment, where the evidence seized pursuant to that warrant is to be employed in a federal prosecution. *United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir. 1993); *see also Preston v. United States*, 376 U.S. 364, 366 (1964) ("The question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by

unreasonable search and seizure is to be judged as if the search and seizure had

been made by federal officers.") (internal citations omitted).

The Fourth Amendment states that to protect against unreasonable searches

and seizures, "no Warrants shall issue, but upon probable cause, supported by Oath

or affirmation, and particularly describing the place to be searched, and the persons

or things to be seized." U.S. Const. amend. IV. Probable cause means more than

just bare suspicion; it exists where "the facts and circumstances" within the

applying officers' knowledge and "of which they had reasonably trustworthy

information [are] sufficient in themselves to warrant a man of reasonable caution in

the belief that an offense has been or is being committed." *Brinegar v. United*

*States*, 338 U.S. 160, 175-76 (1949) (quoting from *Carroll v. United States*, 267 U.S.

132, 162 (1925). To establish probable cause, the government must put facts before

the issuing magistrate that would "'warrant a man of reasonable caution in the

belief' that certain items may be contraband or stolen property or useful as evidence

of a crime." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (quoting *Carroll v. United*

*States*, 267 U.S. 132, 162 (1925)) (internal citations omitted).

### a. The search warrant application omitted material facts that would have vitiated any conclusion that there was probable cause.

The July 2018 search warrant application omitted essential facts that

prevent a finding of probable cause. This includes the application's failure to

include Mr. Casacci's incorporated humane society dedicated to the African cats.

*See* Romano Decl. at ¶ 19; *Exhibit F* (Application for Search Warrant, Search

Warrant & Search Warrant Return) at pgs. 1-37. On January 17, 2018, the New

York State Department of State recognized and incorporated Exotic Cat Humane Society, LLC, in part to rescue African cats and place them in healthy, safe sanctuaries and other environments. *See* Romano Decl. at ¶ 9; *Exhibits A* (Mr. Casacci's Import/Export License), *B* (Screenshots of the website for ExoticCubs.com & Exotic Cat Humane Society, LLC) & *C* (New York State Articles of Organization for Exotic Cat Humane Society, LLC). The warrant application omitted this essential fact.

New York State Environmental Conservation Law § 11-0512(2)(d) exempted the following entities from the mandates of New York State Environmental Conservation Law § 11-0512(2)(d), which prohibit a person from possessing or selling any wild animal in New York and forms the basis of Counts 1 to 18 of the Indictment: "Licensed veterinarians and *incorporated humane societies*, animal shelters, societies for the prevention of cruelty to animals or animal welfare organizations in temporary possession of wild animals" (emphasis added).

The warrant application recites that Mr. Casacci had a valid license to "import/export wildlife for commercial purposes" and that "Mr. Casacci imported a total of 30 wild animals, pursuant to his Importers License, through John F. Kennedy international [sic] Airport in Queens, NY." *See* Romano Decl. at ¶ 19; *Exhibit F* at pgs. 3-4. But it deliberately omits Mr. Casacci having obtained the Exotic Cats Humane Society, LLC incorporation. Thus, without including all the necessary facts, the application falsely implies that Mr. Casacci illegally purchased

and sold the animals across the country without having taken steps to incorporate as a humane society.

The only reasonable conclusion from this material omission is that the application to the issuing magistrate, Amherst Town Court Justice Kara A. Buscaglia, was, at the very least, recklessly misleading.

Suppression of evidence is an appropriate remedy when the magistrate judge who issued a warrant "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *United States v. Leon*, 468 U.S. 897, 923 (1984).  A defendant can successfully challenge the veracity of a search warrant affidavit, and have evidence seized in connection with that warrant suppressed, if he "show[s] that: '(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding.'" *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000) (quoting *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) and discussing *Franks v. Delaware*, 438 U.S. 154, 164-72 (1978)).

Here, the omission in the affidavit was absolutely essential to any probable cause finding.  Had the truth been presented to Justice Buscaglia – that Mr. Casacci maintained a humane society dedicated to African cats, which exempted him New York State Environmental Conservation Law § 11-0512(2)(d) – surely Her Honor would not have issued the warrant for a search of Mr. Casacci's residence.

*See Canfield*, 212 F.3d at 718 ("To determine if the false information was necessary to the issuing judge's probable cause determination, *i.e.*, material, 'a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant.'" (quoting *United States v. Trzaska*, 111 F.3d 1019, 1027-28 (2d Cir. 1997)).

A truthful application would not have provided probable cause for the search of Mr. Casacci's home.  Without the omission of the Exotic Cat Humane Society, LLC, there is no probable cause.

### b.  Law enforcement exceeded the scope of the search warrant.

The Fourth Amendment requires that search warrants "particularly describ[e] the place to be searched, and the . . . things to be seized."  U.S. Const. amend. IV.  The Supreme Court held in *Maryland v. Garrison*, 480 U.S. 79, 84 (1987):

> The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized.  The manifest purpose of this particularity requirement was to prevent general searches.  By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

Here, the search warrant issued on July 3, 2018, specifically authorized law enforcement to "seize business records tending to demonstrate the offense of the harboring, sale, barter, transfer, exchange or importation of any wild animal for use as a pet.  Those business records include, but not be limited to, [sic] paper or

24

electronic, receipts, correspondence, invoices, check book registers, and bank statements." *See* Romano Decl. at ¶ 19; *Exhibit F* at pg. 39. In other words, the search warrant was limited to seizing documents that clearly related to the Lacey Act and New York State Environmental Conservation Law § 11-5012. Well in excess of that scope, law enforcement seized a "Black Binder business with records," "IRS, Department of State & Court Documents relating to Humane Society," "Folder with 'Northwest IRS details,'" and a "Copy of computer files from HP Pavilion Lap Top," which were not included in or authorized by the search warrant. *See* Romano Decl. at ¶ 19; *Exhibit F* at 39-40, 42.

What is more, the word "computer" is nowhere in the search warrant. *See* Romano Decl. at ¶ 19; *Exhibit F* at 38-40. In this day and age, computers are indisputably a closed container worthy of Fourth Amendment protection. *See, e.g.*, *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013); *United States v. Griswold*, 2011 WL 7473466, *4 (W.D.N.Y. June 2, 2011); *United States v. Graziano*, 558 F.Supp.2d 304, 316 (E.D.N.Y. 2008); *see also United States v. Zemlyansky*, 945 F.Supp.2d 438, 458 (S.D.N.Y. 2013) (prohibiting a warrant for "all 'Computers' and 'Thumb drives'"); *United States v. Payton*, 573 F.3d 859, 861-62 (9th Cir. 2009); *cf. United States v. Ganias*, 824 F.3d 199, 218 (2d Cir. 2016) ("[Q]uantitative measures fail to capture the significance of the data kept by many individuals on their computers."). If law enforcement wanted to search and seize Mr. Casacci's computer, it should have applied for that permission with an application that disclosed the pertinent material facts, and allowed Judge Buscaglia

to determine whether there was probable cause for such a broad search and seizure. Presented with a truthful application and request for that search, she would not have granted permission for a rummage through Mr. Casacci's computer.

Indeed, by law enforcement's own descriptions of the items it seized, it had no idea whether the items were authorized by Justice Buscaglia's search warrant. Because law enforcement exceeded the scope of the search warrant and seized items and information in excess of the warrant's permission, the evidence should be suppressed.

### c. Law enforcement violated the search warrant and prejudiced Mr. Casacci by removing the African cats to Nevada and Arkansas.

It is well settled in the Second Circuit that when law enforcement flagrantly disregards the terms of a warrant by effecting a "widespread seizure of items that were not  within the scope of the warrant" and by not acting in "good faith," blanket suppression of all of the fruits of such a search is warranted. *United States v. Liu*, 239 F.3d 138, 140, 142 (2d Cir. 2000) (internal quotations omitted), cert. denied, 534 U.S. 816 (2001). "The rationale for blanket suppression is that a search that greatly exceeds the bounds of a warrant and is not conducted in good faith is essentially indistinguishable from a general search." *Liu*, 239 F.3d at 141.

Here, as authorized by the search warrant, law enforcement seized "six (6) Serval kittens and two (2) Caracal kittens and other illegally possessed regulated wild animals." *See* Romano Decl. at ¶ 19; *Exhibit F* at 39. The search warrant did not, however, authorize law enforcement to remove the African cats to sanctuaries in Nevada and Arkansas. *See* Romano Decl. at ¶ 19; *Exhibit F* at 38-40.

As the African cats in question may be material evidence, the illegal removal and shipment of them across the country violates Mr. Casacci's constitutional due process rights under the Fourth, Fifth, and Sixth Amendments, and Federal Rule of Criminal Procedure 16(a)1(E). What is more, the physical condition and the genetic makeup of the African cats are elements of the crimes at issue under the Lacey Act and New York State Environmental Conservation Law § 11-5012. The illegal seizure and movement of these animals renders Mr. Casacci unable to evaluate the evidence pertinent to his defense.

Despite removing the African cats to Nevada and Arkansas, the government failed to show any exigency or legal basis as to why the cats could not have been held locally, thereby affording Mr. Casacci, and any potential expert witness, the opportunity to inspect the animals. Because the search warrant did not authorize the cats' removal and because there is no good-faith basis to have removed this evidence across the country, the only appropriate remedy in this case would be exclusion as to the fruits of the illegal seizure.

### d. The "Good-Faith" exception does not apply.

Although the government likely will contend that the "good-faith" exception to the exclusionary rule should apply to overcome the issues with the search warrant, *see generally United States v. Leon*, 468 U.S. 897 (1984), the facts of this case dictate otherwise. The exception "does not apply when 'the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false *or would have known was false except for his reckless disregard of the*

truth.'" *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999) (quoting *Leon*,

468 U.S. at 923) (emphasis added); *United States v. Phillips*, 88 F.3d 582, 586 (8th

Cir. 1996). The exception is also inapplicable where the officer or officers who

prepared the affidavit in support of the application were dishonest or reckless in

doing so, or "could not have harbored an objectively reasonable belief in the

existence of probable cause." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir.

2000) (quoting *Leon*, 468 U.S. at 922). Likewise, the exception does not apply when

an officer relies on a warrant based on an affidavit "so lacking in indicia of probable

cause as to render official belief in its existence entirely unreasonable." *United*

*States v. Tinsdale*, 195 F.3d 70, 72 (2d Cir. 1999) (quoting *Leon*, 468 U.S. at 923);

*see also Cherna*, 184 F.3d at 407-08; *United States v. Van Shutters*, 163 F.3d 331,

337 (6th Cir. 1998).

This is not a case where one government agent swears out a faulty affidavit

and then a second agent, unaware of the first application, executes the warrant in

good faith. Here, the same law enforcement agent who swore to the faulty affidavit

executed the search warrant.

###### e. "Evidence" seized by the government after the first illegal search and seizure must be suppressed as "fruit of the poisonous tree."

More than just the evidence seized in the execution of the first search

warrant should be suppressed in this case. "The exclusionary prohibition

extends as well to the indirect as the direct products" of an unlawful search. *Wong*

*Sun v. United States*, 371 U.S. 471, 484 (1963); *see New York v. Harris*, 495 U.S. 14,

19 (1990) (noting that indirect fruits of an illegal search should be suppressed

where they bear a sufficiently close relationship to the underlying illegality).

Tangible and testimonial evidence also must be suppressed when it is "the product of the primary evidence, or . . . is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint." *Murray v. United States*, 487 U.S. 533, 536-37 (1988). To avoid the suppression of such evidence, the government must demonstrate that there was a "break in the chain of events sufficient to refute the inference that the [derivative] evidence was a product of the Fourth Amendment violation." *United States v. Rivas*, 157 F.3d 364, 368 (5th Cir. 1998).

In this case, the government may have obtained derivative evidence from the illegal search and seizure from Mr. Casacci. This evidence and any other evidence derived from the illegal search and seizure must be suppressed as the "fruit of the poisonous tree." *See Wong Sun*, 371 U.S. at 484.

### f. At a minimum, this Court must conduct an evidentiary hearing to address the issues related to suppression.

At the very least, Mr. Casacci is entitled to a *Franks* hearing, where these issues can be explored more fully. *Cf. United States v. Trzaska*, 111 F.3d at 1023-24, 1027-28 (describing a *Franks* hearing held on the basis of false statements in an affidavit submitted in support of a search warrant application). Indeed, this Court should conduct appropriate hearings, including a *Franks* hearing, to resolve factual issues related to the warrant applications, the absence of probable cause, and the extent of suppression necessary to vindicate Mr. Casacci's Fourth Amendment rights.

### C.      DISCOVERY UNDER RULES 12(b)(3)(E) AND 16 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.

Pursuant to Federal Rules of Criminal Procedure 12(b)(3)(E) and 16,

Mr. Casacci moves for an Order of this Court permitting the inspection, copying, or

photographing of all the following items which are in the possession, custody, or

control of the government, the existence of which is known, or by the exercise of due

diligence may become known, to the attorney for the government and which have

not already been made available:

1.    All oral, written, or recorded statements or testimony in the government's possession made by Mr. Casacci, and all reports related to the circumstances of such statements.

2.    All relevant statements and materials of witnesses.

3.    Any tape recordings, computer disks, computer backup files or tapes, fingerprint exemplars, handwriting exemplars, books, papers, documents, photographs, tangible objects, copies or portions thereof, which are material to the preparation of Mr. Casacci's defense and are intended for use by the government as evidence-in-chief at the trial or were obtained from or belong to Mr. Casacci, and any and all reports relating to the circumstances under which such books, papers, documents, etc., came into the possession of the government. Included within this is a specific request for all records, documents, and photographs relating to all shipments of animals as part of this case.

4.    Any photograph or drawing relating to the events alleged in the Indictment made or completed by a public servant engaged in law enforcement activities, or which was made by a person whom the government intends to call as a witness at trial, or which the government intends to introduce at trial, including but not limited to photographs, motion pictures, videotapes, drawings, sketches, diagrams, charts, or other graphic representations of scenes or places or tangible objects relative to this case.

5.    Any underlying data, results, or reports, typewritten and/or handwritten, of physical or mental examinations, or copies thereof, which are material to the preparation of Mr. Casacci's defense or are intended for use by the government as evidence-in-chief at the trial.

6. Any communications between prosecutors and/or agents and witnesses and/or complainants, memorialized in any form, including but not limited to emails, memoranda, or notes.

7. Any communications among the government team, memorialized in any form, including but not limited to emails, memoranda, or notes. The government team includes federal, state, and local law enforcement officers, as well as members of other agencies conducting parallel investigations. If discoverable information is found within an internal document, the discoverable information from that document must be produced regardless of whether the document itself is turned over.

8. Copies of any documents sent by any law enforcement agency to any other governmental agency, department, or division in connection with this case.

9. A date, time, and place to inspect all animals in this case.

10. All veterinarian records and pedigree information for all animals in this case.

11. Any documents or evidence gathered by civil attorneys or regulatory agencies in any parallel civil investigation or action.

12. A copy of all search warrants issued by any court in connection with this case; included in this request is a specific request for:

    a. The application for a search warrant and any supporting document or material referred to therein; and

    b. Any and all reports completed by any member of any law enforcement agency before, during, and after the search warrant was executed.

13. The date and time that any search warrant was executed against the person or property of Mr. Casacci or any other person in connection with this case.

14. An inventory of all materials seized from any person or property, including residences, businesses, and automobiles, of Mr. Casacci or any other person in connection with this case pursuant to a search warrant or otherwise, and where these seized materials were found.

15. Any other property obtained from Mr. Casacci or any other person in connection with this case, and the circumstances under which it was obtained.

16. Any tapes or other electronic recordings which the government intends to introduce at trial, irrespective of whether such recording was made during the course of the alleged criminal conduct; and the date, time, and place of every occasion on which any surveillance, mail cover, search or seizure, whether electronic, photographic, mechanical, visual, aural, or of any other type, was made of Mr. Casacci, together with all documents, photographs, recordings or other materials resulting from or relating to such occasions; included in this request is a specific request for all tapes made pursuant to any eavesdropping, including wiretapping, warrant, or extension or renewal thereof.

17. Any videotapes, audiotapes, or other electronic recordings of Mr. Casacci.

18. If photographs, sound recordings, or video recordings were taken of Mr. Casacci, provide the following:

    a. The name of the person who took the photographs or recordings;

    b. The time the photographs or recordings were taken;

    c. The location at which they were taken;

    d. The circumstances under which they were taken;

    e. The technical experience of the persons who took the photographs or recordings;

    f. Whether Mr. Casacci was read *Miranda* rights or any other rights prior to the taking of the photographs or recordings; and

    g. Whether Mr. Casacci was given any opportunity to refuse to have a photograph taken or to be subject to sound or video recordings.

19. A copy of all eavesdropping, including wiretapping, warrants, or extensions or renewals thereof, by any court in connection with this case; included in this request is a specific request for:

a. Any applications for eavesdropping (including wiretapping) warrant or application for extension or renewal of any eavesdropping (including wiretapping) warrant and any supporting document or material referred to therein; and

b. Any and all reports completed by any member of any law enforcement agency before, during, and after the eavesdropping (including wiretapping) warrant was executed.

20. Any tapes, logs, transcriptions, progress reports, and equipment relating to the interceptions referred to in the two preceding demands.

21. Any and all individual photographs, photo arrays, and/or photo spreads shown to any witness, potential witness, and/or informant.

22. Any written records of photographic and/or corporeal identification procedures.

23. Any other reports, memoranda, or documents relating to this criminal action that contain factual information and are required to be completed in the normal course of business by any law enforcement agency connected with this case, and were so completed in connection with this case. Included within this is a specific request for both the documents and underlying calculations upon which the government bases its conclusion in the Indictment that the market value of each animal exceeded $350.00

24. A copy of Mr. Casacci's state and federal criminal record, if any.

25. If evidence as to which there are arguable grounds for exclusion that the government intends to use as evidence, a written proffer explaining the issues in full, so that Mr. Casacci has the chance to object before any harm is done, pursuant to *United States v. Reyes*, 18 F.3d 65, 72 (2d Cir. 1994).

26. Alternatively, the above-requested materials may also be required to be produced as *Brady* and/or *Giglio* material, pursuant to the mandates of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

Furthermore, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(E) and

16, Mr. Casacci specifically requests an itemization of all evidence which the

government intends to use at trial and specifically requests a detailed written

notification of any additional evidence that the government intends to use in its case-in-chief that may, in any way, be subject to a motion to suppress, which Mr. Casacci is entitled to discover pursuant to Rule 16.

### D.  *BRADY* DOCTRINE MATERIALS.

Mr. Casacci moves this Court for an Order compelling the government to disclose all material which tends to be exculpatory or may be used to impeach or discredit government witnesses.  In *Brady*, the Supreme Court recognized that the government is constitutionally bound by the Due Process Clause to tender to the defendant, on request, any evidence or information which may come into the government's possession or under its control which might reasonably prove favorable to the defendant with respect to the outcome of the trial, or with respect to the severity of the penalties to be imposed upon him should he be convicted.  *See* 373 U.S. at 87.  The materials requested by this motion include those materials in the custody and control of the government or any agency or agent working under the supervision of the government or with the government, including but not limited to federal, state, or local police agencies.

The *Brady* requirement is expansive.  It includes specific requests advanced by Mr. Casacci, pursuant to *United States v. Agurs*, 427 U.S. 97, 106 (1976).  Impeachment evidence, as well as exculpatory evidence, have been determined to fall within the *Brady* rule.  *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (requiring disclosure of information which casts doubt on the credibility of police or the prosecutor's

investigation).  Impeachment material includes any and all considerations or promises of consideration given to, or on behalf of, a witness or expected or hoped for by the witness.  *See, e.g.*, *United States v. Edwardo-Franco*, 885 F.2d 1002, 1009-10 (2d Cir. 1989) (*citing United States v. Leja*, 568 F.2d 493, 499 (6th Cir. 1977)).  It also includes evidence suggesting that someone other than the accused committed the crime alleged.

There is a presumption that the prosecutor has knowledge of all *Brady* material gathered by his or her office and owes a duty to learn of *Brady* material in the possession of other agencies involved in any related investigation.  *Kyles,* 514 U.S. at 437; *see also United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998).  The *Brady* request is to be interpreted liberally in favor of disclosure, *see United States v. Bailleaux*, 685 F.2d 1105, 1113 (9th Cir. 1982), and prior to trial when requested by Mr. Casacci.  *See United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994).

The Second Circuit has held that the personnel files of any government employee or witness should be turned over to the Court for an *in camera* inspection for the presence of *Brady* material.  *United States v. Kiszewski*, 877 F.2d 210, 215-16 (2d Cir. 1989).  Materials to be disclosed should be provided immediately to permit their effective use, *see United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001), and in no event should *Brady* material be provided to Mr. Casacci later than two months in advance of trial so that all investigatory leads may be sufficiently pursued.  *See United States v. Kendall*, 766 F.2d 1426, 1440 (10th Cir. 1985).

Accordingly, Mr. Casacci requests access to all *Brady* material and

information including, but not limited to:

1. Any information that is favorable, advantageous, or helpful to the defense of Mr. Casacci, including but not limited to evidence or information that Mr. Casacci was not a participant in the conduct described in any or all of the Counts charged against him.

2. Any information that in any way is contrary to any government theory or contention, or which does not support any government theory or contention.

3. Any information which would tend to attenuate, exculpate, exonerate, or mitigate Mr. Casacci's alleged involved in any of the conduct alleged in the Indictment.

4. Any information, whether in writing or not, that any member of the government team maintained the opinion that there was insufficient evidence to secure an indictment against Mr. Casacci, including any law enforcement agency working in conjunction with the government.

5. Any and all relevant information on agents and/or law enforcement members who may have interviewed Mr. Casacci, including but not limited to background and training, prior transcripts of cases in which the agent and/or law enforcement member testified, and the agents' and/or law enforcement members' personnel files.

6. Any evidence that Mr. Casacci did not commit a crime or crimes charged, or any evidence that he did not commit any of the essential elements of any charged crime.

7. Any defenses of which the government is aware that would tend to reduce the charge to any lesser offense, or to exculpate him entirely.

8. The names of all persons known to the government who have knowledge pertaining to this case or who were interviewed by the authorities in connection with this case, if such knowledge is exculpatory or mitigates the allegations.

9. Any and all materials which reflect on any government witness's inability to observe or accurately recall events.

10. Any evidence, information, testimony, transcripts, or statements indicating that any prospective government witness on occasion gave false, misleading, or contradictory information regarding the charges at bar to any persons involved in law enforcement, or to their agents, or informers. *See Brady*, 373 U.S. at 87; *Thomas v. United States*, 343 F.2d 49, 53-54 (9th Cir. 1965). Such evidence is not limited to the portion of the witness file relating to the current case but encompasses any false, misleading, or contradictory information found in the entire witness file.

11. Any evidence, information, testimony, transcripts, or statements indicating that any prospective government witnesses have given statements contradictory to one another, including any inconsistent attorney proffers, even if this inconsistency is not memorialized in any document.

12. The criminal records, not limited to United States courts, of any prospective witnesses and any information indicating that these witnesses have in the past perpetrated immoral, vicious, or criminal acts, pursuant to *Giles v. Maryland*, 386 U.S. 66, 72-73 (1967).

13. Any testimony or statement (oral or written) recorded electronically on videotape or otherwise by any grand jury witness or any witness intended by the government to be called at trial concerning prior misconduct, bad acts, or criminal conduct of himself or herself, any grand jury witness, or any other witness intended by the government to be called at trial.

14. Any information recounting any misidentification or inconsistent testimony regarding any identification of Mr. Casacci as the perpetrator of any crime charged, and any information indicating failure on the part of any individual to identify Mr. Casacci as the perpetrator of the crime charged.

15. Any and all records or information which arguably would be helpful or useful to Mr. Casacci in impeaching or otherwise detracting from the probative force of the evidence of the government or which arguably could lead to such records or information. *See United States v. Iverson*, 648 F.2d 737, 738-39 (D.C. Cir. 1981); *United States v. Gleason*, 265 F.Supp. 880, 884 (S.D.N.Y. 1967).

16. Any information to the effect that all or some of the evidence which may be utilized by the government at trial was illegally or improperly obtained, or was obtained even partially as a result of the improper acquisition of some other evidence or information.

17. Any and all consideration or promises of consideration given to or on behalf of any witnesses or expected or hoped for by any witness. By "consideration," Mr. Casacci refers to absolutely anything, whether bargained for or not, which arguably could be of value or use to a witness or to persons of concern to the witness, including but not limited to formal or informal, direct or indirect: leniency, favorable treatment, or recommendations or other assistance with respect to any pending or potential criminal, parole, probation, pardon, clemency, civil, tax court, court of claims, immigration, naturalization, administrative, or other dispute with the government or with any other authority or with any other parties; criminal, civil, or tax immunity grants; relief from forfeiture; payments of money, rewards or fees, witness fees and special witness fees, provision of food, clothing, shelter, transportation, legal services or other benefits; placement in a "witness protection program," informer status of the witness; stays of deportation or other immigration status considerations; consideration extracted by state or local agencies, prosecutors or investigators; consideration or benefits to culpable or at-risk third parties; and anything else which arguably could reveal an interest, motive, or bias in the witness in favor of the government or against Mr. Casacci or act as an inducement to testify or to color testimony.

18. All proffer, immunity, and other agreements, validation assessments, payment information, and other potential witness impeachment information for each informant, witness, source, or cooperating witness. This includes all agreements, assessments, and impeachment information from past cases unrelated to this current case.

19. Any and all evidence which would tend to impeach the credibility of any government witness, *see Bagley, supra; Giglio, supra;* including any evidence that any government witness had previously made false or inaccurate reports of any kind to any public servant and any statements or reports reflecting witness statement variations.

20. Any and all threats, express or implied, direct or indirect, or other coercion made or directed against any witness, criminal prosecutions, investigations, or potential prosecutions pending or which could be brought against the witness, any probationary, parole, deferred prosecution, or custodial status of the witness, and any civil, tax court, court of claims, administrative, or other pending or potential legal disputes or transactions involving the witness or over which the government has real, apparent, or perceived influence.

21. The existence of any agreement between the government or any other prosecuting agency and any government witness, made to induce the testimony of the witness; included in this request is a specific request for any *quid pro quo* or any benefit whatsoever.

22. Any and all evidence that might demonstrate any form of bias, animosity, or motive to lie on the part of any government witness, *Olden v. Kentucky*, 488 U.S. 227, 231-32 (1988), including but not limited to any evidence that any government witness has brought, discussed, or considered a civil suit against Mr. Casacci, any evidence that any government witness believed that Mr. Casacci was guilty of any illegal or immoral act, or posed a threat of danger to anyone, any animosity toward a group of which Mr. Casacci is a member or with which Mr. Casacci is affiliated, or any relationship with the complainants.

23. Any other incentive known to the government which any witness may have to testify against Mr. Casacci.

24. Any evidence that any government witness is a regular user of an intoxicant or a controlled substance.

25. Any evidence that any complainant, any alleged complainant, or any material witness was, to any degree, under the influence of any type of intoxicant or controlled substance at the time of the alleged crime, at the time of identification of Mr. Casacci, or at any time relevant to the Indictment.

26. Any evidence that any alleged complainant or any government witness suffers, or at any time suffered, from any type of mental illness or other mental condition which might affect the accuracy, perception, or comprehension with respect to the incidents in question, or testimony in any way; in addition, any evidence that the alleged complainants or any material witness, at any time, sought or received professional treatment for any such mental illness or other mental condition is requested; any evidence indicating that the complainants or any prospective government trial witness has, in any fashion, participated in illegal conduct.

27. Any information that any prospective witness has been or is being assisted or instructed on the substance or style of their testimony, either at trial or before a grand jury, by the government, any agent or servant of the government, any law enforcement official, or any other person or group.

28. Any and all police reports, incident reports, FBI reports, state law enforcement reports, transcripts, or any other documentation reflecting the name and address of any interview individual who could provide information adversely affecting the credibility, reliability, or veracity of any witness to be called by the government.

29. Any and all reports from any prosecutor, government body, agency which investigated the events alleged in the Indictment and rendered an opinion that there was no criminal conduct on the part of Mr. Casacci or rendered an opinion that there was insufficient evidence of criminal conduct on the part of Mr. Casacci.

30. Any and all records and information revealing prior misconduct or bad acts attributed to any government witness.

31. Any other information that is favorable to Mr. Casacci or the defense of the Indictment or detracts from the government's allegations, theory, argument, or proof.

32. Any exculpatory evidence or information presented or produced before any grand jury; this request also specifically includes any information, in documentary form or otherwise, that the grand jury itself was improperly constituted or that the grand jury's decision to indict defendant was affected by any error of fact or law; this request is not limited to the specific items requested in this paragraph, and must be responded to in conjunction with the demands of the preceding and subsequent paragraphs.

33. The government's position on the applicable sentence under the United States Sentencing Guidelines should Mr. Casacci be convicted of any of the offenses charged, specifically any and all information including any information that would tend to show:

   a. Mr. Casacci was a minimal or minor participant in any of the offenses;

   b. Mr. Casacci demonstrated an acceptance of responsibility for any of the offenses;

   c. Mr. Casacci assisted in the investigation of or the prosecution of another person who may have committed any of the offenses;

   d. Any inaccurate or wrongful information or behavior of the complainants, public officials, or the government that may have contributed to or provoked the behavior of any of the offenses;

40

e.      Evidence that Mr. Casacci may have committed any of the offenses to avoid a perceived greater harm;

f.      Evidence that Mr. Casacci committed any of the offenses because of coercion, duress, blackmail, or entrapment;

g.      Evidence that Mr. Casacci committed any of the alleged offenses while suffering from a reduced mental or emotional capacity; or

h.      Any other evidence or information that might cause a court to impose a non-guideline sentence or grant a departure below the guideline range.

Furthermore, Mr. Casacci respectfully requests that this Court order the government to inquire of the agents, law enforcement members, and witnesses involved in its investigation and prosecution of this indictment regarding the existence of *Brady* material and information. Included in this request for *Brady* material is a specific request for the statements, recordings of, and interview notes with any of those individuals charged with crimes arising out of the conduct at the time, date, and place as the conduct alleged of Mr. Casacci; this request is not limited to the specific items requested and must be responded to in conjunction with the demands of the proceeding and subsequent paragraphs.

The *Brady* requests set forth above are not in any way limited to writings, documents, or tangible information and, thus, if possessed by the government or any agency it should be produced, even if not memorialized.

It is requested that in the event the government has any question whatsoever with respect to whether information in its possession qualifies for disclosure under the mandates of *Brady*, this information be produced for examination by defense counsel or this Court so that a fair determination can be made whether such

material qualifies for disclosure.  The decision of whether such material qualifies for disclosure cannot be left to the *ex parte* determination of the prosecutor, but must be supervised by this Court.  Further, it is requested that this Court acknowledge and inform the government that it has a continuing duty to disclose any such information to Mr. Casacci.

> E. DISCLOSURE OF WITNESS STATEMENTS PURSUANT TO THE *JENCKS* ACT.

Under 18 U.S.C. § 3500 (the "*Jencks* Act"), Mr. Casacci is entitled to witness statements after the witness has completed his or her testimony on direct examination.  Courts have, on a case-by-case basis, exercised their discretion to require production of *Jencks* Act statements some time in advance of the trial so that unnecessary delays will not take place during the course of the trial.  *See United States v. Williams*, 181 F.Supp.2d 267, 295-96 (S.D.N.Y. 2001).

Mr. Casacci respectfully requests that this Court order the government to deliver immediately, but in no event later than thirty (30) days prior to the date of the trial, the following:

1. Any written statement made by a witness that is signed or otherwise adopted or approved by the witness.

2. Any stenographic, mechanical, electronic, or other recording or transcription thereof, which is a substantially verbatim recital of an oral statement made by the witness and recorded contemporaneously with the making of such oral statement.

3. Any statement, however taken or recorded, or a transcription thereof, if any, made by the witnesses to a grand jury.

4. Any and all rough notes of witness interview(s), taken or obtained in any investigation of Mr. Casacci, including federal, state, local, and other investigations, whether or not the contents thereof have been incorporated in official records.

5. Any notes and memoranda made by government counsel during the interviewing of any witness intended to be called by the government in their direct case. *See Goldberg v. United States*, 425 U.S. 94, 101-08 (1976).

6. All surveillance reports made or adopted by a witness. *See United States v. Petito*, 671 F.2d 68, 73 (2d Cir. 1982).

In addition to avoiding unnecessary delays of the trial or during the trial, sufficient pretrial delivery of *Jencks* material also ensures that Mr. Casacci's fundamental rights to a fair trial and due process are safeguarded.

## F.    PRESERVATION OF ALL LAW ENFORCEMENT NOTES.

Pursuant to the authority of *United States v. Gullo*, 672 F.Supp. 99, 105 (W.D.N.Y. 1987), Mr. Casacci moves for an Order requiring the preservation of all agent, law enforcement, and/or investigative notes that were generated during the investigation of Mr. Casacci. The Order should direct the retention and preservation of all rough notes, synopses, and other writings taken as part of their investigation whether or not the contents of the notes are incorporated in official records. This preservation allows this Court to determine at a later time whether disclosure of the notes is required under *Brady*, *Giglio*, or the *Jencks* Act (18 U.S.C. § 3500 *et seq.*). Numerous district court decisions have granted such relief. *See, e.g.*, *United States v. Gladstone*, 2000 WL 1752918, *1 (S.D.N.Y. Nov. 29, 2000); *United States v. Cordero*, 1998 WL 160819, *1 (N.D.N.Y. Mar. 31, 1998). Any

destruction of any notes after this request for preservation cannot be claimed to have been made in good faith.

Mr. Casacci further seeks an Order of this Court requiring the government, its investigators, law enforcement members, and agents to compile a list of documents discoverable under Federal Rule of Criminal Procedure 16 or under the *Brady* doctrine which have been destroyed before, during, or after the investigation. *See generally United States v. Lee*, 862 F.Supp. 1129 (S.D.N.Y. 1994).

### G. NOTICE OF EXPERT WITNESSES.

Mr. Casacci respectfully requests that the government provide at the earliest possible moment a written summary of any opinion testimony the government intends to use during its case-in-chief at trial, pursuant to Federal Rule of Criminal Procedure 16 and Federal Rules of Evidence 702 and 703.

The summary must contain the witnesses' opinions, the basis of those opinions, the reasons for those opinions, and the underlying data and predicate materials which substantiate the reliability of any testing processes. The witnesses' qualifications to give such testimony should also be included in the written summary, and the witnesses' curriculum vitae should be included with it so that the parties and this Court can address the admissibility of any opinion testimony, and so that this Court can perform its "gatekeeping" function under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Included within this is a specific request that the government disclose the information upon which its expert witnesses rely to determine the

44

pedigree and health of the African cats.  All witnesses' handwritten or typewritten notes regarding or related to any opinions also should be preserved and provided to the defense.

## H. DISCLOSURE AND A HEARING PURSUANT TO FEDERAL RULES OF EVIDENCE 404(b), 608, AND 609.

Mr. Casacci anticipates that the government may offer evidence that implicates Federal Rules of Evidence 404, 608, or 609.  As such, Mr. Casacci respectfully requests under Federal Rules of Evidence 404(b), 608, and 609 that the government divulge any and all specific instances of other crimes, wrongs, or acts that it plans to use at trial for any reason.  We also ask that this Court make an advance ruling that precludes the government from using any such "evidence."

In the event that an evidentiary hearing is necessary, Mr. Casacci respectfully requests such a hearing and an opportunity to present proof that the unfair prejudicial effect of any such supposed evidence substantially outweighs its probative value.

## I. DISCLOSURE PURSUANT TO FEDERAL RULE OF EVIDENCE 807.

Federal Rule of Evidence 807 encompasses the residual hearsay exception. Despite the admissibility of such evidence, the government must give Mr. Casacci pretrial notice of its intention to proffer such statements.  Therefore, Mr. Casacci requests an Order that the government give the requisite timely pretrial notice in the event that any such evidence will be proffered at trial.

## J.    DISCLOSURE PURSUANT TO FEDERAL RULE OF EVIDENCE 806.

Federal Rule of Evidence 806 provides that where a hearsay statement or statements as provided for in Federal Rule of Evidence 801 are admitted, the opposing party may attack the credibility of the declarant.

Pursuant to the *Brady* doctrine, Mr. Casacci seeks an Order of this Court that the government provide any evidence and/or other information in its possession or under its control that would tend to impeach the credibility of any declarant whose declaration will be proffered at trial by the government. *See Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154-55.

## K.    LEAVE TO MAKE FURTHER MOTIONS AND TO SUPPLEMENT THESE MOTIONS.

Upon receipt of materials and/or information in response to these motions, the Court's rulings, or future government disclosure, Mr. Casacci reserves his right to request further details in the way of discovery, supplemental bills of particulars, suppression of evidence, or other relief that may be needed as further information is disclosed and acquired.  He may become aware of further pretrial relief which should be sought or matters which should be advanced to supplement the motions already made.  Mr. Casacci therefore requests this Court grant leave to make any additional motions to supplement these motions as may be deemed appropriate at a future date.

## CONCLUSION

This Court should dismiss the Indictment in its entirety as improperly alleged against Mr. Casacci.  In the alternative, this Court should direct an evidentiary hearing with respect to Mr. Casacci's alleged statements to law enforcement and the search warrant, strike surplusage language from the Indictment, direct the government to provide a bill of particulars, and direct the government to disclose and preserve various categories of evidence essential to Mr. Casacci's defense, together with all additional relief this Court deems just and proper.

DATED:     May 8, 2020
              Buffalo, New York

*/s/Nicholas A. Romano*
James W. Grable, Jr., Esq.
Nicholas A. Romano, Esq.
**CONNORS LLP**
*Attorneys for Defendant*
   *CHRISTOPHER D. CASACCI*
1000 Liberty Building
Buffalo, New York  14202
(716) 852-5533
jwg@connorsllp.com
nar@connorsllp.com