# Exhibit 12

STATE OF NEW YORK : SUPREME COURT
COUNTY OF ERIE : CIVIL TERM : PART: 15
_____

In the Matter of Property Seized from

CHRISTOPHER CASACCI,
      Petitioner,

For a Judgement pursuant to CPLR Article 78

  - against -                              INDEX # 814506/2018

                                                    DECISION

INVESTIGATOR ROBERT PEINKOFER,
LIEUTENANT ROBERT O'CONNOR and
THE NEW YORK STATE DEPARTMENT
OF ENVIRONMENTAL CONSERVATION
POLICE,
      Respondents.
_____

                                  25 Delaware Avenue
                                  Buffalo, New York
                                  October 22, 2018


B e f o r e:
        HONORABLE MARK J. GRISANTI
        Acting Supreme Court Justice


A p p e a r a n c e s:


        MATTHEW ALBERT, ESQ.,
        Appearing for the Petitioner.


        BARBARA D. UNDERWOOD, ESQ.,
        NEW YORK STATE ATTORNEY GENERAL
        BY:  JANE CAMERON, ESQ.,
        Assistant Attorney General,
        Appearing for the Respondent.




                        AMY L. HAYES
                    Senior Court Reporter

CASACCI-NYSDEC-0001759

(The following is an excerpt of the proceedings held 10/22/18.)

THE COURT: All right. The Court is going to rule as follows:

Petitioner brought this article 78 proceeding to challenge the holding of property seized by the New York State Department of Environmental Conversation Police. Specifically, the property in question consists of seven exotic cats. The property was seized on July 5, 2018, pursuant to a search warrant issued by the Honorable Amherst Town Court Justice, Kara Buscaglia, on July 3rd, 2018.

Petitioner argues that the exotic cats were being held legally under Environmental Conservation Law 11-0512(2), since the petitioner owned an incorporated humane society. Under this law, an exemption is created for wild animals owned or harbored for use other than use as a pet for a few organizations, including incorporated humane societies. Petitioners further argue that the length of time that the cats have been held is unreasonable due to the fact that the property seized are living animals and their value decreases the longer they are held. According to the petitioner, these cats are losing value because they continue to age while being

|     |                                                                    |
| --- | ------------------------------------------------------------------ |
| 1   | held, as well as being treated as feral animals while in           |
| 2   | the custody of these shelters.                                     |
| 3   | Respondent argues that the petitioner has                          |
| 4   | imported these wild cats with no specifics demonstrating           |
| 5   | any humane reason other than sale or use as a pet.  ECL            |
| 6   | 11-0512(2) specifically states the incorporated humane             |
| 7   | societies are exempt from laws banning exotic animals, as          |
| 8   | long as the animals are held solely for the purpose of use         |
| 9   | other than use as a pet.  Furthermore, the respondents are        |
| 10  | arguing that the federal animal importation license does           |
| 11  | not preempt state law requirements on exotic animals.  In          |
| 12  | particular, NPCL 404(g) claims or requires any corporation         |
| 13  | incorporated under the NPCL 201 to get approval from the           |
| 14  | American Society For the Prevention of Cruelty to Animals,         |
| 15  | which they claim petitioner is lacking.  Petitioner claims         |
| 16  | they are not a part of the NPCL 201.  Lastly, respondents          |
| 17  | argue that any property that is evidence of a crime is             |
| 18  | unlawfully possessed property under CPL 690.10(2).                 |
| 19  | Petitioner incorporated a humane society on                        |
| 20  | 1/17/2018, by the name of Exotic Cat Humane Society, LLC.          |
| 21  | Petitioner also held a U.S. Fish and Wildlife Import               |
| 22  | license.  Petitioner imported several exotic kittens from          |
| 23  | Africa and planned to sell these kittens for anywhere from         |
| 24  | seventy-five hundred to ten thousand dollars each.  The            |
| 25  | New York State DEC executed a search warrant, as stated,           |

1  on July 5th, 2018 and seized seven of these cats in total.
2  The seized cats were taken out of state to facilities in
3  either Arkansas or Nevada.
4       Petitioner applied for a license from the New
5  York State DEC to collect or possess wild animals,
6  specifically for education or exhibition, and was denied
7  on December 19, 2017.  The denial cited that a license is
8  not required for the possession of a caracal, and only a
9  Class C Exhibitor's license is necessary for possession of
10 this species.  At some point, petitioner applied for a
11 Class C Exhibitor's license, and that was denied.  That
12 license was denied the day after the search warrant was
13 executed, citing the executed warrant as the reason for
14 the denial.
15      The facts seem to be unclear as to when
16 petitioner applied for any of these licenses, but the
17 denial dates are included.  Furthermore, respondent claims
18 that two cats had to be euthanized prior to the execution
19 of the warrant, and one of the seven taken also needed
20 medical attention and passed away.  Petitioner's response
21 only makes mention of one cat that he brought to the vet
22 for the parasite and makes no mention of the other two.
23 Additionally, respondents contend all the taken animals
24 required medical attention at the time of seizure, while
25 petitioner only mentions the one cat needing medical

attention.

Respondents mention that petitioner imported approximately thirty wild animals through his federal animal import license through the first five months of 2018. These animals have been sold on exoticcubs.com for the above-mentioned prices. Petitioner, however, makes no mention of these animals, nor of the website used for sale in any papers.

A CPLR article 78 proceeding will properly lie to require the return of property, other than contraband, seized pursuant to a search warrant that's held for an unreasonable length of time without the commencement of a criminal action. See Moss, 19 A.D.3d 599. A CPLR article 78 proceeding for a writ of prohibition is an extraordinary remedy that lies only where there is clear legal right to such relief, and only when the body or officer involved acts or threatens to act without jurisdiction in a matter over which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction. See HCI, 110 A.D.3d 1297.

The Court has the discretion to deny the issuance of a writ of prohibition after considering such factors as the gravity of the harm caused by the excess of power, the availability or unavailability of any adequate

        remedy on appeal, or at law, or in equity, and the remedial effectiveness of prohibition if such an adequate remedy does not exist. See the HCI case, quoting the Matter of Soares, 20 N.Y.3d 145. Where the harm caused by the alleged excess of power by the governing power or agency is primarily economic in nature, a petitioner must establish that it would not be made whole by any way of a civil claim for monetary damages.

        Every certificate of incorporation of a corporation for prevention of cruelty to animals shall have endorsed thereon or annexed thereto the approval of the American Society for the Prevention of Cruelty to Animals. NPC 404(g) states: It shall be prohibited for any person to knowingly possess, harbor, sell, barter, transfer, exchange or import any wild animal for use as a pet in New York State except as provided by ECL 11-0512(a). This section shall then apply to the following persons and entities with respect to wild animals owned or harbored by them solely for the purpose other than for the use as a pet. It's licensed veterinarians and incorporated humane societies, animal shelters, societies for the prevention of cruelty to animals, or animal welfare organizations in temporary possession of wild animals. Again, see 11-0512(2)(d).

        The petitioner's only license is a U.S. Fish and

1  Wildlife Import license. He's applied for many different
2  licenses. It was denied for many different reasons.
3  Regardless, petitioner engaged in the sale of over
4  thirty-five exotic cats before he was granted a license
5  other than the U.S. Fish and Wildlife Import license.
6  Petitioner claims that his incorporated humane society
7  granted him the legal avenue to sell these cats, this
8  Court feels, is without merit, as 404(g), this court
9  feels, required the approval of the ASPCA, which
10 petitioner does not have.
11          In sum, all of the previously sold cats, as well
12 as the cats currently under the DEC's possession, were
13 sold or planned to be sold before petitioner may have had
14 the proper license or legal avenue to do so.
15          Petitioner also has no proof that his actions
16 are humane in any way. He claims that he saves these cats
17 from a hunting reservation in Africa and is just looking
18 for good homes here, yet he sells these cubs online for
19 seventy-five hundred to ten thousand. Additionally,
20 petitioner claims the cats that have been relocated to
21 shelters are not being treated humanely. We have no
22 evidence, however, of such treatment other than possibly a
23 social media post by the shelter to raise money for the
24 cats that they are taking care of.
25          It's also true, and pursuant to a recently filed

1  affidavit, New York State DEC has yet to press any
2  criminal charges, but the DEC investigated the petition
3  and believes these cats are considered contraband per se,
4  and they are still within their legal boundaries with
5  regard to holding on to any sort of contraband.
6      Furthermore, petitioner's main argument is that
7  the cats will not be able to find homes since they have
8  been taken, but the main fact is that the cats are losing
9  value.  The matter of HCI has already established that
10 where the harm is primarily economic, the petitioner must
11 establish that he not be made whole by a civil claim for
12 monetary damages or other avenues.
13     In conclusion, the Court is going to deny the
14 petition in full, with the ability, if need be, to amend
15 or re-bring the petition if it comes down to a civil claim
16 for monetary damages along those lines.  Get a copy of my
17 full decision, attach it to the order.
18     MS. CAMERON:  Do you want the State to do that,
19 Judge?
20     THE COURT:  This particular motion -- because
21 you had a motion to dismiss, correct?
22     MS. CAMERON:  Yes.
23     THE COURT:  Okay.  This particular motion to
24 release, as I said, is denied.  Your motion to dismiss is
25 granted only up to the point, however, that if counsel

1  wants to re-bring something under a different article with
2  regards to civil or monetary damages or if it's beyond the
3  statutory time period that they have to look for the
4  return of the property they can do that as well. So, yes,
5  get a copy. The respondents will incorporate both in the
6  same order. Get a copy of my full decision from Amy and
7  attach it. Okay.
8            MS. CAMERON: So, Your Honor, do you want the
9  State to prepare the proposed order?
10           THE COURT: Yes.
11           MS. CAMERON: Thank you.
12           MR. ALBERT: Thank you, Judge.
13           THE COURT: All right.

                    *     *     *

C E R T I F I C A T I O N

Date:

   I certify that the foregoing 9 pages are a correct transcription of the proceedings recorded by me in this matter.

                _____
                AMY L. HAYES,
                Senior Court Reporter.